IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**TELICIA A. DEBERRY**                                                    **PLAINTIFF**

**V.**                                       **CIVIL ACTION NO. 1:18CV86 LRA**

**NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY**                        **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff appeals the final decision denying her application for disability insurance benefits (DIB). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g) affirming the final decision of the Administrative Law Judge. Pursuant to the consent of the parties, this case is now before the undersigned for a final decision. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the Court finds that this matter should be remanded for further proceedings consistent with the opinion.

On August 15, 2016, Plaintiff filed an application for DIB alleging a disability onset date of March 1, 2014, due to neck fusion, migraine headaches, sleep apnea, major anxiety disorder, bladder dysfunction, lower back pain, and tachycardia. She was 40 years old on her alleged onset date and was pursuing a bachelor's degree in health care administration before filing her application. Plaintiff retired from the Air Force in 2014, and has worked as a flight chief, with additional experience in medicine, infection control, and medical technology. Following agency denials of her application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that she had

not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. She now appeals that decision.[1]

At step one of the five-step sequential evaluation,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At steps two and three, the ALJ found that although Plaintiff's degenerative disc disease of the cervical spine, anxiety disorder, and mood disorder were severe, they did not meet or medically equal any listing. Based on the evidence, the ALJ found that Plaintiff had the residual functional capacity to perform light unskilled work, "except that she must have simple instructions only, and must only have occasional contact with the public and supervisors."[3] Relying on the above residual capacity finding and Medical-Vocational Guidelines, the ALJ concluded at steps four and five that Plaintiff could not perform her past relevant work, but could perform other jobs existing in significant numbers in the national and regional economies.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and

---

[1] ECF No. 10, pp. 168-71, 196.

[2] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[3] ECF No. 10, p. 35.

(2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff argues that the ALJ failed to sustain the Commissioner's burden at step five by establishing the existence of other work that she can perform. Specifically, she asserts that the ALJ committed reversible error because she applied the Medical-Vocational Guidelines ("Grid Rules") instead of obtaining vocational expert testimony. Plaintiff does not directly challenge the ALJ's residual functional capacity determination or her assessment of the medical evidence. Although not identified as an issue on appeal, she asserts that the residual functional capacity limitation to "simple instructions" and "occasional contact with the public and supervisors" fails to fully account for her moderate difficulties in concentration, persistence and pace as determined by the ALJ. However, she does not fully brief this point.[4] Her central argument is that the ALJ's

---

[4] *United States v. Whitfield,* 590 F.3d 325 (5th Cir. 2009) (party generally waives any argument that it fails to brief on appeal).

3

exclusive reliance on the Grid Rules at step five, despite the existence of nonexertional impairments, was reversible error. Given the relevant legal principles and the facts of this case, this claim is not without merit.

At step five of the sequential analysis, the Commissioner bears the burden of proving the claimant can perform work in the national economy despite her impairments. To meet this burden, the Commissioner either obtains vocational expert testimony, or takes administrative notice of the available jobs in the national economy by consulting the Grid Rules. *Fields v. Bowen*, 805 F.2d 1168, 1171 (5th Cir.1986). "Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled." *Heckler v. Campbell,* 461 U.S. 458, 461–62 (1983).

In this Circuit, application of the Grid Rules "is only appropriate 'when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity.'" *Watson v. Barnhart*, 288 F.3d 212, 216 (5th Cir. 2002) (quoting *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999)); *Guillory v. Barnhart*, 129 F. App'x 873, 874 (5th Cir. 2005) ("If those impairments do not have a significant effect on her residual functional capacity, use of the Grid Rules is appropriate."). "If, however, the claimant suffers from nonexertional impairments, or a combination of exertional and nonexertional

impairments, then the Commissioner must rely on a vocational expert to establish [jobs in the national economy that the plaintiff can perform.]" *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir. 2000).[5] As a general rule, a finding of a severe impairment at step two typically results in a finding that the resulting limitations significantly affect a claimant's residual functional capacity. However, it is unclear whether a nonexertional impairment deemed severe at step two is the equivalent of finding that it significantly affects a claimant's residual functional capacity, precluding reliance on the Grid Rules. *See Hermann v. Commissioner of Soc. Sec.,* 317 F. Supp. 3d 900, 907 (N.D. Miss. 2018) *and Smith v. Commissioner of Soc. Sec.*, No. 3:17CV63-DAS, 2018 WL 3463278 (N.D. Miss. July 18, 2018) (observing same).

---

[5] Although it is undisputed that Plaintiff suffers from a combination of exertional and nonexertional impairments, it does not appear the combination ***alone*** is sufficient to preclude exclusive reliance on the Grid Rules. Courts interpreting Fifth Circuit precedent post-*Newton* have held that even in combination with an exertional impairment, a nonexertional impairment must significantly affect a claimant's residual functional capacity to preclude exclusive reliance on the Grid Rules. *See Guillory*, 129 F. App'x. at 874 (the mere presence of a nonexertional impairment does not preclude use of the Grid Rules if the impairment does not have a significant effect on the claimant's residual functional capacity) (citation omitted); *Davis v. Colvin*, No. 1:14-CV-215 HSO-RHW, 2015 WL 3936568, at *3 (S.D. Miss., Jun. 26, 2015) ("If the claimant suffers non-exertional impairments or a combination of exertional and non-exertional impairments that significantly affect the claimant's residual functional capacity, then the Commissioner must rely on a vocational expert to establish that suitable jobs exist in the national economy."); *Mosley v. Astrue*, No. 5:12-CV-049-BG, 2013 WL 840821, at *2 (N.D. Tex., Feb. 12, 2013) ("in a case in which the claimant suffers from a combination of exertional and nonexertional impairments, the ALJ may rely on the guidelines only if the claimant's nonexertional impairments do not significantly affect his [residual functional capacity]"). *But see Milligan v. Colvin*, No. 2:12-CV-101, 2013 WL 5345842, at * 5 (N.D. Tex. Sept. 24, 2013) (ALJ's reliance on the Grid Rules was in direct contradiction to the requirements of *Newton* where claimant has combination of exertional and nonexertional limitations).

In one line of cases, the Fifth Circuit has linked "the definition of a 'severe' impairment at Step Two to the determination of whether a claimant's nonexertional impairments significantly affected his [RFC] such that reliance solely upon the Grid Rules at Step Five would be inappropriate." *Hearne v. Barnhart,* 111 F. App'x. 256, 257–58 (5th Cir. 2004) (quoting *Loza v. Apfel*, 219 F. 3d 378, 391-398 (5th Cir. 2000)); *see also White*, 239 F. App'x. 71, 73- 74 (5th Cir. 2007) ("An ALJ's finding of a severe nonexertional impairment at step two precludes the ALJ from relying solely on the Grid Rules at step five.");[6] *Harris v. Barnhart*, 204 F. App'x. 447, 449 (5th Cir. 2006) (holding that claimant "suffers from paranoid schizophrenia, a severe nonexertional impairment, and thus not only was the ALJ within his discretion to rely on the VE, but he was required to do so"). District courts following this line of cases have "reasoned that an impairment which so 'significantly limits' the claimant to be determined severe at Step Two is *a priori* an impairment significantly affecting the claimant's RFC at Step Five." *Milligan*, 2013 WL 5345842, at * 4-6; *Allsbury v. Barnhart*, 460 F. Supp.2d 717 (E.D. Tex. 2006) (reliance on Grid Rules was improper in light of ALJ's earlier finding that claimant's nonexertional impairments, in combination, were severe, which, by definition, meant that they significantly limited claimant's ability to do basic work

---

[6] *But see Hermann*, 317 F. Supp.3d at 909 (observing that is unclear "why the court in *White* also cited *Hearne v. Barnhart* in the same decision for the proposition that '[a]n ALJ's finding of a severe non-exertional impairment at step two precludes the ALJ from relying solely on the Grid Rules at step five.' *White,* 239 Fed. Appx. at 73–74. It appears that is precisely what the court did in *White*. There did not appear to be an argument in *White* that his pain was not severe.'").

6

activities).

In another line of cases, the Fifth Circuit has affirmed the use of the Grid Rules despite a nonexertional severe impairment when (a) the ALJ finds that the nonexertional limitation did not significantly affect the claimant's residual functional capacity, and (b) substantial evidence supported the determination. *Guillory*, 129 F. App'x at 874; *Fraga v. Bowen*, 810 F.2d 1296,1304 (5th Cir. 1987). District courts following this line of cases note that the severity standard is merely a threshold finding – separate and distinct from the determination made at step five. *See Hermann,* 317 F. Supp. 3d at 911 ("It appears to the court that with both differing functions and standards at these two steps that some claimants may have nonexertional impairments that meet the Step Two *de minimus* standard, but that nevertheless do not significantly limit a claimant's RFC at Step Five."); *Smith*, 2018 WL 3463278 at *7 (observing same); *Ramsdell v. Colvin,* No. 4:14-CV-835, 2016 WL 4203896, *3 (E.D. Tex. Aug. 10, 2016) (step-two severity finding is a "low burden, and a different inquiry than that performed at the later steps of the sequential evaluation"). Having considered the matter carefully, the Court finds remand is warranted under either standard here.

At step two, the ALJ recognized Plaintiff's anxiety and mood disorders as severe nonexertional impairments "significantly limiting" her ability to perform basic work activities. She later concluded that these impairments impacted Plaintiff's residual functional capacity to perform the full range of light work by limiting her to only simple instructions and occasional contact with the public and supervisors. The ALJ failed to find that Plaintiff's residual functional capacity was not significantly affected by her

7

nonexertional impairments. *Kern v. Colvin*, No. 3:14-CV-437-BH, 2015 WL 1344761, *11 (N.D. Tex. Mar. 25, 2015) (remanding in part because the ALJ did not make a finding that claimant's nonexertional limitations did not significantly affect his residual functional capacity); *Roccatagliata v. Barnhart*, No. SA–05–CA–0505 OG (NN), 2006 WL 2290566, at *7 (W.D. Tex. Aug.7, 2006) (ALJ's reliance on the Grid Rules was improper when the ALJ found that the claimant had severe nonexertional impairments but "did not determine that plaintiff's RFC was not significantly affected by her non-exertional impairments"). Nowhere in the ALJ's decision, in fact, does the ALJ make this express finding. Reasonable minds may disagree whether such a finding would have been internally inconsistent with the ALJ's step-two finding that Plaintiff's nonexertional impairments "significantly limit the ability to perform basic work activities." Reasonable minds might also question whether such a finding can be reconciled with the fact that the ALJ's residual functional capacity determination imposed limitations based solely on these nonexertional impairments. *Lockett v. Colvin*, No. 4:12-CV-221-Y, 2013 WL 4854529, at * 8 (N.D. Tex. Sept. 11, 2013); *Milligan*, 2013 WL 5345842, at * 4-6 (observing that the restriction to "unskilled work" directly resulted from plaintiff's nonexertional limitations). But on this point, the law is well-settled: Use of the Grid Rules is only appropriate when the ALJ finds the claimant's nonexertional impairments do not significantly affect his residual functional capacity. *Watson*, 288 F.3d at 216. Because no such finding was made here, the ALJ was precluded from relying upon the Grid Rules at step five. *See Newton,* 209 F.3d at 458. Rather, the ALJ was required to use expert vocational testimony or other similar evidence to establish jobs existing in the

8

national economy that Plaintiff could perform.

Notwithstanding, the Commissioner submits that use of the Grid Rules was proper because the ALJ found that Plaintiff's nonexertional limitations did not significantly erode the occupational based of unskilled work. Specifically, the Commissioner argues that unskilled jobs are consistent with a limitation to simple instructions and "ordinarily involve dealing primarily with objects, rather than data or people." *See* SSR 85–15, 1985 WL 56857, at *4.

The record confirms that despite finding Plaintiff's mental impairments "significantly limited" her ability to perform basic work activities at step two, the ALJ found that Plaintiff's nonexertional limitations had "little or no effect on the occupational base of unskilled light work"[7] at step five. However, an "ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455. Even if this reasoning were applicable here, the ALJ's analysis of the erosion of the occupational base is only partially complete.[8] With regard to the

---

[7] ECF No. 10, p. 44.

[8] The ALJ also indicated that a finding of "not disabled" was appropriate under the framework of Medical Vocational Rule 202.21. Although it is not entirely clear, to the extent the ALJ was utilizing the Grid Rules as a framework, she was required to obtain vocational expert testimony. *Beasley v. Astrue*, No. 3:09-CV-764 TSL-MTP, 2012 WL 694824 (S.D. Miss. Feb. 23 2012). Further, courts have observed that "the framework concept—when applied so broadly as to constitute direct application of the grids—does not comport with the spirit of *Heckler v. Campbell,* 461 U.S. at 468, 103 S.Ct. 1952, which upheld use of the grids as part of individualized determination required in every case by constitutional Due Process." *Allsbury,* 460 F.Supp.2d at 724. *See also Gonzalez v. Astrue,* No. M–09–210, 2013 WL 1345298 at *9 n. 14 (S.D. Tex. Mar. 29, 2013) (recognizing that courts and legal experts have observed that "[h]ow exactly, the grids provide . . . a framework is unclear . . . [but] one thing is clear: Where the claimant's characteristics do not 'coincide exactly' with a Grid rule, the ALJ should introduce expert vocational testimony to further assist him in his 'Grids framework' guided analysis.") (internal citations omitted)). *See also Nobles v. Comm'r of Soc. Sec. Admin.,* No. 9-00-CV-128, 2002 WL 553735, at * 6 (E.D. Tex. Apr. 10,

9

limitation to simple instructions, the ALJ observed that there are approximately 1600 sedentary and light unskilled occupations in the national economy that "can be performed after a short demonstration or within 30 days, and do not require special skills or experience." Yet, the ALJ did not address how Plaintiff's limitation to only occasional contact with the public and supervisors would impact the occupational base of light unskilled work. *See Lockett*, 2013 WL 4854529, at * 5; *Milligan*, 2013 WL 5345842, at * 4-6; *Chapa v. Astrue*, No. 2:05-CV-253, 2008 WL 952947, at * 6 (N.D. Tex. Apr. 8, 2008) ("Whether plaintiff's moderate impairment in the area of concentration, persisten[ce] and pace limited plaintiff to one and two step jobs and whether such eroded the occupational base and to what degree it was eroded was a determination for a vocational expert.") In the absence of an individualized assessment, it is not clear the ALJ considered the combined effects of Plaintiff's nonexertional limitations on the occupational base before applying the Grid Rules as the Commissioner suggests. *Raney v. Berryhill*, No. 3:16-CV-3256-BT, 2018 WL 1305606, at *4 (N.D. Tex. Mar. 12, 2018). The value of a vocational expert's input at step five is that "he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the

---

2002) ("Unfortunately, the Commissioner's regulation gives no explanation as to how the grids provide a framework for consideration of how much an individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by nonexertional limitations. Moreover, one cannot divine such explanation through deductive reasoning. Logically, one cannot imagine how reviewing the grids – limited by definition to administrative findings of available alternative employment for persons suffering from *exertional* impairments – elucidates an inquiry concerning scope of disabling effects of *nonexertional* impairments.") (emphasis in original).

attributes and skills needed." *Vaughan v. Shalala,* 58 F.3d 129, 132 (5th Cir. 1995). Remand is necessary so that such an assessment can be made.

For all the above reasons, the Court finds the ALJ's decision should be remanded for re-evaluation of step-five, so that the ALJ may conduct further proceedings consistent with this decision. Plaintiff's motion is granted only to the extent that the case is remanded to the Commissioner; the Motion for an Order Affirming the Commissioner's Decision is denied.

SO ORDERED on September 27, 2019.

                                                         s/ Linda R. Anderson
                                         UNITED STATES MAGISTRATE JUDGE